IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF OHIO
EASTERN DIVISION

**ELISA MAYFIELD,**

    **Plaintiff,**

  vs.                                  **Civil Action 2:13-cv-764**
                                             **Magistrate Judge King**

**COMMISSIONER OF SOCIAL SECURITY,**

    **Defendant.**

## OPINION AND ORDER

This is an action instituted under the provisions of 42 U.S.C. § 405(g) for review of a final decision of the Commissioner of Social Security denying plaintiff's application for a period of disability, disability insurance benefits, and supplemental security income.  This matter is now before the Court, with the consent of the parties pursuant to 28 U.S.C. § 636(c), on *Plaintiff's Statement of Specific Errors* ("*Statement of Errors*"), Doc. No. 19, and the Commissioner's *Opposition to Statement of Errors* ("*Commissioner's Response*"), Doc. No. 26.  Plaintiff has not filed a reply.

Plaintiff Elisa Mayfield filed her applications for benefits on February 22, 2012, alleging that she has been disabled since September 21, 2010.  *PAGEID* 286.  The applications were denied initially and upon reconsideration, and plaintiff requested a *de novo* hearing before an administrative law judge.

An administrative hearing was held on February 1, 2013, at which plaintiff, represented by counsel, appeared and testified, as did Catherine Bradford, who testified as a vocational expert.  *PAGEID* 73.

In a decision dated February 6, 2013, the administrative law judge concluded that plaintiff was not disabled from October 13, 2011, through the date of the administrative decision.  *PAGEID* 66-67.  That decision became the final decision of the Commissioner of Social Security when the Appeals Council declined review on June 24, 2013.  *PAGEID* 42.

Plaintiff was 38 years of age on the date of the administrative law judge's decision.  *See PAGEID* 67, 286.  She has at least a high school education, is able to communicate in English, and has not engaged in substantial gainful activity since October 13, 2011, the amended alleged onset date.  *PAGEID* 57, 65.

The administrative law judge found that plaintiff's severe impairments consist of "disorders of the back, arthritis, a sleep disorder, osteopenia, fibromyalgia, major depression, a neurological disorder, posttraumatic stress disorder, and an adjustment disorder with depressed mood[.]"  *PAGEID* 57.  The administrative law judge also found that plaintiff's impairments neither meet nor equal a listed impairment and leave plaintiff with the residual functional capacity ("RFC") to perform

> light work as defined in 20 CFR 404.1567(b) and 416.967(b) except that she can only occasionally engage in pushing, pulling, or foot control activity, and should never climb ladders, ropes or scaffolds.  In addition, the claimant can only occasionally stoop, kneel, crouch, crawl, balance, or climb ramps and stairs.  The claimant is also limited to occasional overhead reaching with the left upper extremity.  Furthermore, the claimant should avoid all exposure to the use of hazardous machinery, operational control of moving machinery, and unprotected heights.  Finally, the claimant is limited to the performance of simple, routine and repetitive tasks, in a work environment free of fast-paced quota requirements, involving only simple, work-related

>       decisions, with few, if any, workplace changes, and where
>       there is no greater than occasional interaction with
>       coworkers or the general public.

*PAGEID* 58-59. Although this RFC would preclude plaintiff's past relevant work, the administrative law judge relied on the testimony of the vocational expert to find that plaintiff is able to perform a significant number of jobs that exist in the national economy, including such light unskilled jobs as assembler, inspector, and sorter. *PAGEID* 65-66. Accordingly, the administrative law judge concluded that plaintiff has not been disabled within the meaning of the Social Security Act from October 13, 2011, through the date of the administrative law judge's decision. *PAGEID* 67.

Pursuant to 42 U.S.C. § 405(g), judicial review of the Commissioner's decision is limited to determining whether the findings of the administrative law judge are supported by substantial evidence and employed the proper legal standards. *Richardson v. Perales*, 402 U.S. 389 (1971); *Longworth v. Comm'r of Soc. Sec.*, 402 F.3d 591, 595 (6th Cir. 2005). Substantial evidence is more than a scintilla of evidence but less than a preponderance; it is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion. *See Buxton v. Haler*, 246 F.3d 762, 772 (6th Cir. 2001); *Kirk v. Sec'y of Health & Human Servs.*, 667 F.2d 524, 535 (6th Cir. 1981). This Court does not try the case *de novo*, nor does it resolve conflicts in the evidence or questions of credibility. *See Brainard v. Sec'y of Health & Human Servs.*, 889 F.2d 679, 681 (6th Cir. 1989); *Garner v. Heckler*, 745 F.2d 383, 387 (6th Cir. 1984).

In determining the existence of substantial evidence, this

Court must examine the administrative record as a whole. *Kirk*, 667 F.2d at 536.  If the Commissioner's decision is supported by substantial evidence, it must be affirmed even if this Court would decide the matter differently, *see Kinsella v. Schweiker*, 708 F.2d 1058, 1059 (6th Cir. 1983), and even if substantial evidence also supports the opposite conclusion.  *Longworth,* 402 F.3d at 595.

The Court first considers plaintiff's argument that the administrative law judge erred in evaluating the medical opinions of record.  *Statement of Errors*, pp. 16-19.  Plaintiff specifically argues that the administrative law judge violated the treating physician rule in evaluating the opinions of Michael G. Saribalas, D.O., and erred in failing to evaluate the opinion of clinical psychologist Audrey Todd, Ph.D.  *Id*.

"Medical opinions are statements from physicians and psychologists or other acceptable medical sources that reflect judgments about the nature and severity of your impairment(s), including your symptoms, diagnosis and prognosis, what you can still do despite impairment(s), and your physical or mental restrictions." 20 C.F.R. § 416.927(a)(2).  An administrative law judge is required to evaluate every medical opinion, regardless of its source.  20 C.F.R. § 416.927(c).  However, the opinion of a treating source must be given controlling weight if that opinion is "well-supported by medically acceptable clinical and laboratory diagnostic techniques" and is "not inconsistent with the other substantial evidence in [the] case record."  20 C.F.R. § 416.927(c)(2).  Even if the opinion of a treating source is not entitled to controlling weight, an

4

administrative law judge is nevertheless required to evaluate the opinion by considering such factors as the length, nature and extent of the treatment relationship, the frequency of examination, the medical specialty of the treating physician, the extent to which the opinion is supported by the evidence, and the consistency of the opinion with the record as a whole.  20 C.F.R. §§ 404.1527(c)(2)-(6); 416.927(c)(2)-(6); *Blakley v. Comm'r of Soc. Sec.*, 581 F.3d 399, 406 (6th Cir. 2009); *Wilson v. Comm'r of Soc. Sec.*, 378 F.3d 541, 544 (6th Cir. 2004).  Moreover, an administrative law judge must provide "good reasons" for discounting the opinion of a treating provider, *i.e.*, reasons that are "'sufficiently specific to make clear to any subsequent reviewers the weight the adjudicator gave to the treating source's medical opinion and the reasons for that weight.'"  *Rogers v. Comm'r of Soc. Sec.*, 486 F.3d 234, 242 (6th Cir. 2007) (quoting SSR 96-2p, 1996 WL 374188, at *5 (July 2, 1996)).  This special treatment afforded the opinions of treating providers recognizes that

> "these sources are likely to be the medical professionals most able to provide a detailed, longitudinal picture of [the claimant's] medical impairment(s) and may bring a unique perspective to the medical evidence that cannot be obtained from the objective medical findings alone or from reports of individual examinations, such as consultative examinations or brief hospitalizations."

*Wilson,* 378 F.3d at 544 (quoting 20 C.F.R. § 404.1527(d)(2)).

Dr. Saribalas provided psychiatric care and treated plaintiff for a sleep impairment from August 2011 through January 2013.  Dr. Saribalas first evaluated plaintiff on August 18, 2011, and noted that plaintiff had a depressed mood, flat affect, appeared tired, and was tearful.  *PAGEID* 475-76.  Dr. Saribalas assigned a global assessment

of functioning score ("GAF") of 45[1] and diagnosed major depressive disorder, recurrent, severe without psychotic features; posttraumatic stress disorder; attention deficit disorder; and personality disorder, NOS.  *Id*.  Dr. Saribalas consistently observed that plaintiff had a dysphoric mood, bland affect, and decreased speech.  *PAGEID* 474 (September 2011), 473 (October 2011), 472 (November 2011), 471 (January 2012), 470 (March 2012), 480 (July 2012), 758 (July 2012), 757 (August 2012).  Plaintiff was also noted as having a dysphoric mood and bland affect; *PAGEID* 752 (January 2012), 481 (May 2012); depressed mood, flat affect, and decreased speech; *PAGEID* 754 (November 2012); and dysphoric mood, anxious affect, and decreased speech.  *PAGEID* 756 (September 2012).

Plaintiff underwent a sleep study on August 24 and 25, 2011.  *PAGEID* 477-78.  Dr. Saribalas opined that plaintiff exhibited a short sleep latency and a long REM latency and "should not drive or operate anything that could be dangerous until the sleepiness and fatigue improves."[2]  *Id*.  On July 2, 2012, Dr. Saribalas completed a functional capacity assessment and opined that plaintiff was markedly limited in 17 of 20 areas of functioning related to understanding and memory,

---

[1]  "The GAF scale is a method of considering psychological, social, and occupational function on a hypothetical continuum of mental health.  The GAF scale ranges from 0 to 100, with serious impairment in functioning at a score of 50 or below.  Scores between 51 and 60 represent moderate symptoms or a moderate difficulty in social, occupational, or school functioning . . . ."

*Norris v. Comm'r of Soc. Sec.*, 461 F. App'x 433, 436 n.1 (6th Cir. 2012).

[2] Plaintiff does not challenge the administrative law judge's evaluation of Dr. Saribalas's opinion relating to plaintiff's ability to drive or operate equipment.

sustained concentration and persistence, social interaction, and adaptation. *PAGEID* 747. Plaintiff was moderately limited in the remaining three areas of functioning. *Id*. On January 21, 2013, Dr. Saribalas opined that plaintiff could occasionally perform basic mental activities of work on a sustained basis in five of 13 areas related to the ability to make occupational adjustments, two of three areas of intellectual functioning, and four of six areas related to the ability to make personal and social adjustments. *PAGEID* 883-84. Plaintiff could rarely perform on a sustained basis in the remaining areas of functioning. *Id*. Dr. Saribalas identified plaintiff's diagnosed major depressive disorder, recurrent; posttraumatic stress disorder; and attention deficit disorder as supporting his opinion. *PAGEID* 884.

The administrative law judge categorized Dr. Saribalas as a mental health provider, discussed Dr. Saribalas's treatment notes, and evaluated his opinions, but assigned "little weight" to the opinions:

> Both of these providers[3] completed mental health functional assessments indicating that the claimant had severe and profound mental health impairments (13F, 15F, 21F). The undersigned considered these opinions but gave them little weight. Both of these opinions were no more than a range of checkbox entries without any substantive explanation for the conclusions contained therein. Further, the claimant's treatment records did not support their conclusions. While there were some instances where her mental status was noted to be diminished or where her providers indicated she had moderate mental health symptoms, there were numerous other instances where her mental status was noted to be normal and there was no indication she had significant symptoms. Overall, the lack of consistency between her treatment

---

[3] The administrative law judge incorrectly attributed one of Dr. Saribalas's opinions to another physician. The Commissioner represents that the administrative law judge made a typographical error and plaintiff's *Statement of Errors* suggests the same characterization.

7

>     record and these opinions, along with the lack of
>     explanation for the conclusions, raises serious issues as
>     to the credibility of these opinions.

*PAGEID* 61-64.

The administrative law judge's analysis of Dr. Saribalas's opinions does not violate the treating physician rule.  The analysis is sufficiently specific as to the weight given to Dr. Saribalas's opinions and the reasons for assigning that weight.  Although the administrative law judge did not expressly categorize Dr. Saribalas as a treating source or expressly state and evaluate the factors required by *Wilson*, it is evident that the appropriate factors were considered. The administrative law judge noted that Dr. Saribalas was a mental health provider and that he had provided psychiatric treatment from August 2011 through January 2013.  *See PAGEID* 61-62.  The administrative law judge also noted that Dr. Saribalas's opinions lacked substantive explanation and were inconsistent with the "numerous other instances where [plaintiff's] mental status was noted to be normal and there was no indication she had significant symptoms."  *PAGEID* 63.  In short, the administrative law judge did not violate the treating physician rule in evaluating Dr. Saribalas's opinions and his evaluation is supported by substantial evidence.

Plaintiff also argues that the administrative law judge erred in failing to evaluate the opinion of the consultative examiner, Dr. Todd.  *Statement of Errors*, p. 19.  The Commissioner concedes that the administrative law judge's "decision does not reference this examination." *Commissioner's Response*, p. 13.  The Commissioner argues, however, that it was unnecessary for the administrative law

8

judge to do so because "Dr. Todd did not offer an opinion as to Plaintiff's mental limitations." *Id*. The Commissioner's argument is not well taken.

Dr. Todd evaluated plaintiff and completed a psychological evaluation on April 21, 2011, to determine plaintiff's eligibility for vocational rehabilitation through the Bureau of Vocational Rehabilitation. *PAGEID* 437-42. Dr. Todd administered the COPS Interest Inventory, the Beck Depression Inventory – Second Edition ("BDI-II"), and the Millon Clinical Multiaxial Inventory – Third Edition ("MCMI-III"). Plaintiff achieved an overall score of 34 on the BDI-II, "placing her in the range of severe depression." *PAGEID* 439. Dr. Todd assigned a GAF of 52 and diagnosed mood disorder not otherwise specified (rule out schizoaffective disorder); polysubstance dependence, in remission; and personality disorder not otherwise specified with paranoid, borderline, and schizotypal features. *PAGEID* 441. Dr. Todd explained these diagnoses as follows:

> [Plaintiff] endorsed a history of mood problems as well as the possibility of mania or hypomania. Sleep and appetite were described as impaired, and crying spells were endorsed. She was tearful at times during the evaluation. She endorsed low motivation, poor energy, and fatigue. A history of suicidal ideation was also endorsed. Schizoaffective Disorder could be a possibility, insofar as she reported that she has experienced psychosis intermittently, even when she is not experiencing a mood episode. However, it is difficult to determine the extent to which her odd beliefs and experiences are more attributed to her Axis II disorder (i.e., Schizotypal). Due to the long history of drug dependence she endorsed, it is also possible that her mood disorder is, at least in part, substance-induced. Psychosis was also endorsed. Based on the available evidence, [plaintiff] is diagnosed with Mood Disorder Not Otherwise Specified (Rule Out Schizoaffective Disorder). In addition, as discussed above, the consumer endorsed a long history of

> polysubstance dependence beginning at the age of 10 and ending approximately 16 years ago when she became pregnant with her first child. As a result, [plaintiff] is diagnosed with Polysubstance Dependence, in Remission.
>
> With respect to Axis II, [plaintiff] endorsed a history of erratic mood, suicidal ideation, self-mutilation, impulsivity, and drug abuse (characteristics consistent with Borderline Personality Disorder). She also endorsed symptoms of unusual beliefs and preferences, as well as a history of seeing shadows and hearing whispers. Her demeanor during the interview was intense and unusual, and the Schizotypal scale on the MCMI-III was highly elevated. In addition, [plaintiff] endorsed a history of anxiety and paranoia (e.g., indicating that she was being persecuted by her prior supervisor and revealing that she had an overall distrust of physicians). She indicated her awareness that her paranoia was not psychotic, and stated, "it's real. They are out to get me." Based on the above, [plaintiff] is diagnosed with Personality Disorder Not Otherwise Specified with Paranoid, Borderline, and Schizotypal Features.

PAGEID 441. Dr. Todd concluded and opined as follows:

> 1. [Plaintiff] would benefit from psychiatric consultation to obtain, for instance, a low-dose antipsychotic such as Abilify to help her manage her hallucinatory experiences.
>
> 2. [Plaintiff] indicated that she does not know if she is ready to work due to her depressed mood. Her reluctance, in conjunction with her depression, should be resolved as she moves forward.
>
> . . .
>
> 5. Based on her personality disorder, it is probable that future interpersonal conflicts and misinterpretations will arise. This tendency should be addressed with her Community Rehabilitation Provider, and a plan for how to avoid such occurrences could be implemented.

PAGEID 441-42.

As noted *supra*, an administrative law judge is required to evaluate every medical opinion, regardless of its source. 20 C.F.R. § 416.927©. As a one-time consultative psychological examiner, Dr. Todd is properly classified as a nontreating source. *See* 20 C.F.R. §§ 404.

10

1502, 416.902 ("Nontreating source means a physician, psychologist, or other acceptable medical source who has examined [the claimant] but does not have, or did not have, an ongoing treatment relationship with [the claimant]."). With regard to nontreating sources such as Dr. Todd, "the agency will simply '[g]enerally [] give more weight to the opinion of a source who has examined [the claimant] than to the opinion of a source who has not examined' him." *Ealy v. Comm'r of Soc. Sec.*, 594 F.3d 504, 515 (6th Cir. 2010) (quoting 20 C.F.R. § 404.1527(d)(1)). *See also Smith v. Comm'r of Sec. Sec.*, 482 F.3d 873, 875 (6th Cir. 2007). In determining how much weight to give the opinion of a nontreating source, an administrative law judge should still "consider factors including the length and nature of the treatment relationship, the evidence that the physician offered in support of her opinion, how consistent the opinion is with the record as a whole, and whether the physician was practicing in her specialty." *Ealy*, 594 F.3d at 514 (citing 20 C.F.R. § 404.1527(d)).

Dr. Todd opined that, *inter alia*, plaintiff would likely have future interpersonal conflicts and misinterpretations due to her personality disorder. *PAGEID* 442. Dr. Todd's statements in this regard qualify as "medical opinions" within the meaning of 20 C.F.R. §§ 404.927(a)(2); 416.927(a)(2) because they "reflect judgments about the nature and severity of [plaintiff's] impairment[s], including [plaintiff's] symptoms, diagnosis and prognosis, . . . ." However, there is no indication whatsoever that the administrative law judge considered Dr. Todd's medical opinion. The administrative law judge made no mention of Dr. Todd's medical opinion, nor did he consider the

evidence offered in support of the opinion, the consistency of the opinion with the record as a whole, or whether Dr. Todd was practicing her specialty. *See Ealy*, 594 F.3d at 514 (citing 20 C.F.R. § 404.1527(d)). Although the administrative law judge is not required to expressly articulate the actual weight assigned to the medical opinion of a nontreating source, *see Jewell v. Comm'r of Soc. Sec.*, No. 08-58-DLB, 2008 WL 4656911, at *3 (E.D. Ky. Oct. 21, 2008), it must be apparent from a fair reading of the administrative decision that the medical opinions of nontreating sources were at least considered. This is not the case here. Under these circumstances, the Court concludes that the matter must be remanded for further consideration of the opinion of Dr. Todd.

Having determined that this action must be remanded, the Court need not and does not address plaintiff's remaining arguments.

Accordingly, the decision of the Commissioner is **REVERSED** and this action is **REMANDED** for further consideration of the opinion of Dr. Todd.

The Clerk shall enter **FINAL JUDGMENT** pursuant to Sentence 4 of 42 U.S.C. § 405(g).


July 29, 2014                               *s/Norah McCann King*
                                           Norah McCann King
                                      United States Magistrate Judge